AND THE

## CORRECTION OF ERRORS,

OF THE

### STATE OF NEW YORK,

IN JUNE AND JULY, 1825.

---

JOHN MURRAY AND JAMES B. MURRAY, Appellants,
*against*
JOHN G. COSTER AND OTHERS, Respondents.

After a plea of the statute of limitations to a bill for an account and discovery, with an accompanying answer, is overruled, and the defendant ordered to put in a full and perfect answer, he will not be allowed to repeat, in his second answer, the same matter contained in the plea which had been overruled, though he add matter in his second answer sufficient to sustain the defence upon the statute ; but he must put in a full and perfect answer.

Points and matters not decided, or passed upon by the whole court :

1. To what extent a defendant may, by answer, refuse to answer, noticed per. Colden, Senator, and particularly examined by Savage, Ch. J. who argues that he should be allowed thus to refuse in all cases.

2. When the statute of limitations is sufficiently pleaded by answer, examined. Per Savage, Ch. J.

3. In what cases, after matter has been pleaded and passed upon by the court, it may be again set up by the defendant in a plea or answer. Per Sutherland, J. and Colden, Senator.

4. Subsequent confessions, not admissible in evidence to explain former ones. Per Colden, Senator.

5. How far a defendant should be allowed to explain away facts, admitted in one answer in chancery, by a subsequent one. Per Colden, Senator.

6. How far an offer of compromise, or admissions connected with it, are evidence. Per Colden, Senator.

7. General object and course of pleading in chancery. Per Savage, Ch. J.

NEW YORK,
June and
July, 1825.

Murray
v.
Coster.

APPEAL from the Court of Chancery. The history and statement of this case may be gathered from 5 John. Ch. Rep. 522, S. C. 7 id. 157, S. C. and 20 John. Rep. 567, 610, S. C. on appeal from the decision in 5 John. Ch. Rep. 522. It now came up on appeal from the order mentioned in 7 John. Ch. Rep. 173, overruling certain exceptions to the master's report.

The following brief view of the case is however deemed proper in this place:

John G. Coster and others, the respondents, as assignees of the Columbian Insurance Company, in June, 1821, filed their bill against John & James B. Murray, the appellants, calling upon them to account for one-third of the proceeds of certain linens purchased at Copenhagen in 1813, by one George Dickinson as the agent of the company, and James B. Murray as agent of the appellants. The bill charged that these linens were purchased on the joint account of the insurance company and the Murrays, the company advancing one-third and the Murrays two-thirds of the purchase money; and that the nett proceeds of the linens were to be divided in the same proportion. That the linens were shipped from Copenhagen by James Murray to the United States, and came to the hands of the appellants, who sold them and received the proceeds. That in June, 1814, the respondents demanded from the appellants the one-third of the linens, or their proceeds. That the appellants admitted that they had received and sold the linens; and a few weeks thereafter rendered to the respondents an account of sales, in which they charged for insurance and commissions more than $2000, to which the respondents objected. That they repeatedly urged the appellants to pay them the one-third of the proceeds of the linens, which they neglected or refused to do until May, 1821, when, being threatened with a prosecution, the appellants proposed that an interview should be had between the counsel of the parties, which accordingly took place. That the counsel for the appellants proposed that they should pay to the respondents the principal amount of the one-third part of the proceeds of the linens without interest. That this proposition was declined by the respondents.

To this bill the appellants put in a plea of the statute of limitations; and an answer in support of that plea denying any promise to pay within six years. The cause was heard upon the pleadings, and the Chancellor (December 11th, 1821) overruled the plea and answer, on the ground that it was a case of trust, and therefore not affected by the statute of limitations; and ordered the appellants to put in *a full and perfect answer*.(a)

Upon appeal to this Court, the decree was, in November, 1822, affirmed; not, however, on the ground taken by the Chancellor; but because the answer contained such an admission of the respondents' debt as to defeat the operation of the statute of limitations, which, therefore, was no bar.(b)

The original plea and answer being thus overruled, and the appellants being ordered to put in a full and perfect answer, they filed their second answer within the time limited by the order of the Court of Chancery; but instead of fully answering the charges in the bill, stating an account and making the discovery sought for, they set up the statute of limitations, as a bar to the discovery, account and relief sought, and confined their answer to an explanation of those charges in the bill which, if unanswered, would have defeated the plea of the statute.(c) To this answer the respondents filed seven exceptions, and the appellants not submitting to put in a further answer, the exceptions were referred to a master, who reported that they were well taken.(d) The appellants excepted to the report of the master;(e) but the Chancellor overruled the exceptions and confirmed the report, directing the appellants to answer the six first exceptions allowed by the master; and (upon the 7th exception) that a certain part of the first answer should be stricken out.(f) The cause came here on appeal from this order.

The only point now decided was the same as that in 7 John. Ch. Rep. 167, S. C.

The facts necessary to the understanding of some other points, adverted to or discussed by several of the Judges, are sufficiently stated in their opinions.

The reasons of the late Chancellor in support of the order were rendered as in 7 John. Ch. Rep. 170, 173, S. C.

NEW YORK, June and July, 1825.

Murray v. Coster.

(a) 5 John. Ch. Rep. 532.

(b) 20 John Rep. 603 to 610.

(c) 7 John. Ch. Rep. 167.

(d) Id. 168.
(e) Id

(f) Id. 173.

NEW YORK,     The cause was very fully argued at the last session, in
June and     January, 1825, by
July, 1825.

Murray        *J. V. Henry*, for the appellants, and
v.
Coster.           *Talcott*, Attorney General, for the respondents.

But the authorities, and the different views of counsel, are so fully presented in the former reports of the cause above referred to, and were now so thoroughly considered by the Judges in giving their opinions, that it is not deemed necessary to repeat them.

SUTHERLAND, J. (after stating the case.)   The first and
The   *point* principal question which arises, is, whether the appellants,
stated.   after their *plea of the statute of limitations* had been over-ruled, were at liberty to insist on the same matter *by way of answer*.   If it should be held that they were not, then the exceptions to the answer are clearly well taken ; as the appellants, being deprived of their bar to the relief sought, were bound to answer fully to all the matters contained in the bill.

But if they were entitled to set up the same defence by way of answer, which had been passed upon and overruled, when offered by way of plea, it still remains to be considered, whether, having undertaken to answer, they were not bound to make discovery, and answer fully *as to every thing that would not take away or destroy the defence of the statute of limitations.*

The general position, that if a plea is overruled, the defendant may insist on the same matter by way of answer, is certainly to be found in treatises on the practice and proceedings in Chancery, of high and established character. But, like most other general propositions, it is subject to limitations and exceptions ; and the extent to which it is true, can only be accurately understood by an examination of the cases from which it professedly derives its authority, and from a consideration of its bearing and effect upon other general principles of fundamental truth and importance in the administration of every system of justice.   The cases which were cited and relied on by the defendant's counsel

to sustain their position, are *Harris* v. *Ingledew*, (3 P. Wms. 91,) *Stephens* v. *Gaule*, (2 Vern. 701,) *Finch* v. *Finch*, (2 Ves. Sen. 491,) *East India Co.* v. *Campbel*, (1 Ves. Sen. 246,) and *The Earl of Suffolk* v. *Green*, (1 Atk. 450.)

*Harris* v. *Ingledew*, (3 P. Wms. 91,) was a case of a bill filed by the simple contract creditors of William Ingledew, after his death, to compel a sale of his real estate for payment of his debts ; he having devised his real estate subject to the payment of his debts. The bill was filed against the devisees and others who had purchased portions of the real estate from them. One of the defendants who had thus purchased, pleaded that he was a purchaser for a full and valuable consideration, but omitted in his plea to deny notice of the will of William Ingledew. The plaintiff replied, and took issue on the plea ; and the question was, whether the plaintiff, by replying to the plea, instead of setting it down to be argued, and excepting to it, had not admitted it to be a good defence in law, provided it was true in fact. And the counsel of the defendant, among other reasons which he urged in support of his position, contended that if the legal efficacy of the plea was not admitted by the replication, " the defendant might be tricked by the plaintiff, who having found that the defendant had made a slip in his plea, might decline setting it down for argument, and reply to it, in which case the defendant would be without remedy ; for he could do no more than prove his plea ; whereas, if such plea *had been set down to be argued, on its being overruled, the defendant might still have helped himself by putting all his defence in his answer.* The Master of the Rolls, in deciding this point, simply says, the constant course is, in case a plea be replied to, that the defendant need only prove his plea, &c. ; and takes no notice of the consideration which had been urged by counsel. He neither adopts nor repels it. This case, therefore, furnishes no authority in support of the position for which it was cited. But if the language of the counsel in that case had in truth been the language of the Court, as the Chancellor, in his opinion, seems to suppose it was, it would not affect this case : *first*, for the reason assigned by the Chancellor, " that it does not appear that the Court would not

*Margin notes:* NEW YORK, June and July, 1825. Murray v. Coster. Harris v. Ingledew, 3 P. Wms. 91.

NEW YORK,
June and
July, 1825.

Murray
v.
Coster.

Finch     v.
Finch, 2 Ves.
Sen. 491.

have required the answer to meet fully all the charges in the bill." But, *secondly*, and I think principally, because a purchase for a valuable consideration, *without notice of a previous charge*, is both in form and substance a very different defence from a purchase for a valuable consideration, merely. In overruling the latter, therefore, when offered by way of plea, the Court would not have passed upon and decided the former. No reason, therefore, could exist, why it should not be put forth as a defence, by way of answer, if it was originally proper matter for an answer.

In *Finch* v. *Finch*, (2 Ves. Sen. 491,) all the Court decided was, that a defendant, whose answer had been reported to be insufficient, and who, without excepting to the report, had submitted to answer again, was not precluded from insisting on the same matter in his second answer. Lord Hardwicke said that it was not a proper manner of bringing the matter before the Court; but that the defendant was not absolutely precluded by the forms of the Court from doing it; that where there are several exceptions, the Court has always said, that as this matter has not undergone the judgment of the Court, they shall be suffered to go into it. If it was a single exception, perhaps it would be another matter. That it was not like a second demurrer, or a second plea, which can not be put in a second time, if overruled. Yet, he remarked, " the Court frequently allows the defendant, after it has overruled a plea, to insist on the same matter by answer ; and that comes on the merits at hearing the cause ;" taking the well established distinction, that the Court will not, after a demurrer or a plea is overruled, grant leave to put in a second demurrer or a second plea, containing the same matter; but that it will sometimes, after a plea is overruled, permit the defendant to insist on the same matter by answer. And if he answer fully, his right again to insist on the same matter may be reserved for discussion on *the hearing upon the merits*, instead of being determined upon exceptions. But if he set up the same matter in order to protect him from discovery, his right to avail himself of it ought to be determined upon exceptions, and not upon the hearing on the merits. In the first case, it may, perhaps, be put in without

leave having been first obtained in the latter, it clearly ought not. The case of *Finch* v. *Finch*, therefore, decides nothing that has any application to this case; and the illustration used by Lord Harwicke seems to me very clearly to show that, in a case like this, he would not have listened to a defence by way of answer, which had *under gone the judgment of the Court, and been overruled by way of plea.*

NEW YORK,
June and
July, 1825.

Murray
v.
Coster.

The *East India Company* v. *Campbel,* (1 Ves. Sen. 246,) was an information brought in the name of the attorney general, to compel the defendant to discover how he came by the possession of certain goods in the East Indies; whether it was not by fraud or violence; and whether they were not the property of the Indians. The defendant pleaded that he could not discover how the goods came to his possession, because it would subject him to a fine or corporal punishment, or to the penalties in the act of parliament, for carrying on trade within the jurisdiction of the East India Company. The plea having been overruled, he put in a demurrer, which was in substance, the same as his plea. The Court sustained the demurrer, but evidently upon the particular circumstances of the case. They say, it was an out of the way bill, and of a dangerous nature, by persons having no right, and founded on supposition. And after contending that a demurrer after a plea was not within the notion of two dilatories, they conclude by saying, " but supposing it to be dilatory, a court of equity must not, merely for form's sake, be a court of inquisition to do great injustice." And by way of illustration, they remark, *that a plea may be overruled, as a plea of purchase, without notice for want of form, covering too much, and yet it may be insisted on in the answer.* This is the only observation that has any relation to a case like this; and the distinction between the case put and this will at once be perceived. If a plea be overruled for *want of form*, its merits have not been considered, or passed upon by the Court, and if it was originally proper for an answer, there may be no objection to its being presented in that shape after it has been overruled as a plea, on some collateral point of form.

*E. India Co.*
v. *Campbel,* 1
Ves. Sen. 246.

NEW YORK,    *The Earl of Suffolk* v. *Green*, (1 Atk. 450,) was the case
June and     of a bill filed to perpetuate the testimony of witnesses to a
July, 1825.
             bond, given by the plaintiff's ancestor.   The bill charged
Murray       that the defendant, Green, who was the obligee in the bond,
v.
Coster.      was very aged, and infirm, and that the bond was *usuri-*

Earl of Suf- *ous.*  The defendant demurred to so much of the bill as
folk v. Green, sought discovery, and also to perpetuate the testimony.
1 Atk. 450.
             The demurrer was held to be bad so far as it related to per-
             petuating the testimony, though good as to the discovery.
             But a demurrer that is bad in part, is void *in toto.*  It was
             therefore overruled, but liberty was expressly reserved to
             the defendant to insist by way of answer, against making
             any discovery touching the usurious contract, charged by
             the bill.   So far, therefore, as any inference is to be drawn
             from this case, it is against the right to insist by way of
             answer, upon any defence which has been overruled on
             demurrer, even on the ground of informality, unless liberty
             to insist on it is expressly reserved.

Stephens v.      In *Stephen* v. *Gaule*, (2 Vern. 701,) the plaintiff filed
Gaule, 2 Vern. his bill to redeem a mortgage, and charged that the defen-
701
             dant pretended to be a jointress, and in nature of a pur-
             chaser from her husband; whereas, her husband was only
             an assignee of a mortgage and had no other title.   The
             defendant pleaded her title, and denied notice of the mort-
             gage; but did not answer whether her husband had any
             other title than as assignee of a mortgage; and the plea was
             overruled by Lord Harcourt.   Exceptions being taken to
             this answer, on the ground that it omitted to state whether
             the husband of the defendant had any other title than as
             assignee of the mortgage, Lord Chancellor Cowper *allowed
             the answer to be sufficient.*

                 The first observation to be made upon this case is, that
             the plea was overruled by Lord Harcourt, and the answer
             was decided to be sufficient by Lord Chancellor Cowper.
             He probably thought the plea had been improperly over-
             ruled.   But the decisive objection to the case as an author-
             ity upon the point now under discussion, is, that the objec-
             tion does not appear to have been taken, that the defence
             set up in the answer had already been overruled in the plea.

*For* aught that appears, liberty to insist upon the same de-
fence may have been reserved when the plea was overruled,
or subsequently granted; or it may have been permitted
simply, because it was not objected to.

These are all the cases cited by Lord Redesdale, (Mitf.
Plead. 244,) to support the position, that if a plea is over-
ruled, the defendant may insist on the same matter by way
of answer. They certainly show that under certain cir-
cumstances, it is admissible. But there is not one of them
that countenances the idea, that a defence which is proper
for a plea, after it has been presented in that shape, and
discussed and maturely considered by the Court, and final-
ly overruled *upon the merits*, may again be presented by
way of answer. The remark of the Chancellor is therefore
just, " that there is no foundation in authority for such an
answer in any of the cases which have a bearing on the
question."

The object of a plea, is to prevent further proceedings, at
large, by resting on some point founded on matter stated in
the plea; (Mitf. Plead. 15;) and the defence proper for a
plea must be such as reduces the cause to a particular
point, which will bar the plaintiff's demand, and then it is
of use; because, by having the judgment of the Court upon
that point, the parties are saved the expense of the examina-
tion of witnesses: (2 Madd. 299:) or, as Chief Baron Mac-
donald expresses it, in *Freeland* v. *Johnson*, (2 Anstr. 410:)
"The meaning of a demurrer or plea is to intercept, in an
early stage, a cause which must ultimately end in nothing;
a demurrer, by something in the bill; a plea, by matter *de
hors*. If a plea could be repeated, he observes, it would
not do its office; it would not have the effect of saving liti-
gation, but would encourage defendants to try it as a daily
experiment to save time." It is therefore an established
principle in chancery, that the same matter can not be a
second time *pleaded*, although the first plea was overruled
*on a ground of form*. You may move for a rehearing, or
for leave to amend; but you cannot again plead the same
plea. The reason or principle on which this rule is estab-
lished is, that a plea is, in truth, only an excuse for not an-

Murray
v.
Coster.

Mitf. Plead.
244.

Object of a
plea.

Same matter
cannot be a
second time
pleaded.

NEW YORK,
June and
July, 1825.

Murray
v.
Coster.

Though it may
be amended
*in form*, or de-
fendant may
avail himself
of it by answer,
if his answer
be full in
other respects.
So perhaps of
the merits, if
the answer be
full

swering on the ground of some conclusive bar. If it is de-
cided to be insufficient, the *effect* and the presumed object
of putting it in, is delay. It shall not therefore be repeated.
But if it be overruled *on a point of form*, the Court may
grant leave to amend, or the defendant may avail himself
of the same matter in his answer, if his answer is full and
perfect in other respects. He will then have the benefit of
it on the hearing: and if it should be decided against him,
the complainant will not be again delayed. And it may
be that it would not be ground of exception to an answer,
that it contained the same matter which had been overru-
led in a previous plea, even *on the merits*. If the answer
was full, the question might be reserved to the hearing.
But the Court, I apprehend, would not again take the matter
into consideration, if it had already been solemnly decided
upon the plea. However this may be, it is most manifest,
that there is no distinction in principle, between a second
plea, which contains the same defence that had been over-
ruled in a former plea, and an answer containing *merely
the same matter*. The effect is the same, if it be decided
that the matter in the answer is not sufficient to bar relief,
or protect the defendant from discovery, and he be directed
to make a full and perfect answer, and the complainant is
a second time delayed upon the same ground, which is the
precise objection to a second plea. I should therefore ap-
prehend, with the Chancellor, that if a second plea be not
admissible, it must be equally inadmissible, when it comes
in a varied shape in point of form, but in the same shape,
and with the same pretensions in point of substance.

These general considerations have a peculiar force when
applied to this particular case. The decree or order of De-
cember, 1821, overruled the plea of the statute of limitations,
and the answer accompanying it, and directed the defend-
ant *to put in a full and perfect answer to the bill.* It cer-
tainly was the intention of the Chancellor by that decree,
finally to dispose of the statute as a bar to the discovery and
relief sought by the bill. If it had not been, he would ac-
cording to the established course of the Court, instead of
overruling the plea, have directed it to stand for an answer

NEW YORK
June and
July, 1825.

Murray
v.
Coster.

with liberty to the respondents to except. The appellants supposed that if that decree was sustained, the defence of the statute of limitations was gone. If not, why did they appeal from the decree? If, according to its terms and spirit, its only operation was to strike from the records of the cause the paper on which the plea was written, and not to dispose of the defence itself, and to leave them at liberty again to present it in the shape of an answer, why did they not put in their answer at once? Why appeal from the decree, when it was a matter of perfect indifference to them whether it was affirmed or reversed; as it only affected the form and not the substance of their defence? If they have now a right to set up the statute of limitations by way of answer, they had a right to do it the moment the decree of December, 1821, was pronounced. That decree was simply affirmed without being altered or modified by this Court. The proceedings of this Court also showed that they supposed that, by affirming the decree of the Chancellor, the question of the statute of limitations was put at rest, and that such was their intention.

After the decree of affirmance was pronounced, on the ground that the answer of the appellants contained such an admission of the respondents' debt as to defeat the operation of the statute of limitations, their counsel moved the Court so to modify the decree, as that the cause might be sent back to the Court of Chancery, without prejudice on the point on which the Court had grounded their decision; and so that the defendants might amend their answer upon that point. The motion was denied, and Spencer, Ch. J. whose opinion upon this motion prevailed, said, "Independent of all that relates to the negotiation between the counsel of the parties, the answer contains a sufficient admission of the debt to take it out of the operation of the statute. An amendment, therefore, of the answer would avail nothing. If the Court had the power, he should not, be for exercising it, *in order to let in the statute of limitations in this case,* where the party has made such a clear admission of the debt as is contained in the answer." Ch. J. Spencer, therefore, supposed that the object and effect of the application, if

granted, would be to enable the appellants again to set up the defence of the statute of limitations; and he was for denying the motion on the very ground that they ought not again to be permitted to set up the statute. And such undoubtedly was the opinion of a majority of the Court who concurred with him. Under such circumstances, I fully assent to the correctness of the observation of the Chancellor, "that after a plea of the statute has been once technically pleaded, and formally discussed, considered and overruled, and again solemnly discussed and overruled upon appeal, and a full and perfect answer required by the order of both Courts, and an effort to have the decretal order so modified as to allow the plea to stand for an answer, denied, it surely cannot, upon any reasonable principle, be permitted to the party to escape from the order in this way, and bring the very same matter into discussion." I am, therefore, of opinion upon this ground, without considering the other point in the cause, that the decree of his honor the Chancellor should be affirmed.

*Sutherland, J. concludes that decree should be affirmed.*

WOODWORTH, Justice, concurred.

*The point to be decided.*

COLDEN, Senator. The most material question to be decided, appears to me to be embraced by the second point submitted by the counsel for the appellants, to wit, "that the answer (that is the last answer) is a bar to the relief sought." If it be so, then, unquestionably, the appellants are right in their conclusion, that it protects them from an account, and from a discovery as to all such parts of the bill as are referred to in the first six exceptions to the answer. If they are so protected, the master was wrong in allowing these exceptions; and the order or decree of the Chancellor, requiring a further answer from the appellants, cannot be sustained.

If the last answer be a bar to an account and discovery, as the appellants contend, it must be so, because they have a right, in this second answer, again to set up the statute of limitations; and to insist on new or explanatory matter to show that in their former answer they had made no admission which would prevent the statute from being a bar.

The Chancellor decided that they having first pleaded the statute and that plea having been overruled, they were thereby precluded from insisting on the statute a second time by way of answer, or at least that they could not do this without leave.

I cannot doubt the correctness of the Chancellor's decision. If, in this case, the statute may, as a matter of course, be insisted on by way of answer, after it has been overruled as a plea, it will follow that in every case a party may first plead any matter in bar, and when that is overruled, or (as in case before us) even after an appeal to this Court, and a decree against it, he may, at the end of all this litigation, send his adversary nearly back to the commencement of the suit.

After statute of limitations has been overruled in a plea, it cannot be insisted on by answer, without leave.

There is, in my opinion, no necessity for allowing a course which must lead to so much delay, vexation and expense. If, after a plea has been overruled, it should happen that the plea or the answer by which the party intended to support it was insufficient, through some omission or mistake, he might apply in the Court below for leave to amend. So, in this case, if the matter set up in the second answer would afford just grounds to support the plea of the statute, the appellants ought to have applied to the Court of Chancery for liberty to bring them under its consideration.

I do not think the suggestions of the appellants well founded, that this course could not have been pursued, because the plea and answer were overruled, and therefore could not have been amended. The whole matter was under the control of the Chancellor, and there was nothing to prevent his modifying the decree as he might think right.

The appellants asked for a modification of the former decree of this Court after it had been pronounced, and this Court would have had no hesitation in making the modification, if it had appeared to them that justice required that they should do so.

But I put my opinion in this case on other grounds. Let it be admitted, and I take the fact to be so, that the appellants, in their first answer, made admissions, in order to support their plea, which clearly deprived them of the benefit of the statute : Can they be permitted in their second an-

NEW YORK,
June and
July, 1825.

Murray
v.
Coster.

*Subsequent confessions not admissible to explain former ones.*

*And after a defendant has, in answering a bill, admitted what does away his plea of the statute of limitations, he ought not to be allowed to explain away his admissions by a subsequent answer.*

swer again to set up the statute and to allege new matter, which is entirely to do away the force of their first admissions?

If a person in conversation, or in writing, make declarations which are an admission of the validity of a claim against him, he will not be permitted to give evidence of subsequent declarations or writings which may contradict or explain away his first admissions. And most assuredly a party cannot be permitted to do this, after, in a course of litigation, he has been made to feel the force of his original declarations.

It seems to me extraordinary, that the appellants should insist that they have a right, as a matter of course, by a second answer, to cancel the admissions which they put on record under oath in their first answer. There can be no rule of law which will authorize so great a violation of justice and common sense. To allow a party, when he may find that he has made an incautious admission, to contradict himself by a new answer, would be to hold out too great a limitation in the consciences of men. To adopt the words of Lord Nottingham, in answer to an application to enlarge publication, "it would be of dangerous consequence, if people, after seeing where a cause pinched, should then be at liberty, to bolster up the faulty part."

The appellants cannot expect to be allowed, by their second answer, to vary or control their admissions in the first answer, unless they can succeed in establishing the position so strenuously urged by their counsel, that the overruling the plea and the first answer, annihilated that answer, so far that it must be entirely overlooked, although it forms part of the record before the Court. I do not believe there is any technical rule which obliges justice to be so blind to matters which are spread before her, by those whose controversy she is to decide.

*Especially, if, on overruling this plea, the chancellor orders that he should put in a full and perfect answer.*

But again, the order of the Court of Chancery, and the decree of this Court requires that the appellants should put in a *full and perfect answer*. Why were this order and this decree made? Because the appellants had never answered the bill. They had pleaded the statute, and set

NEW YORK.
June and
July, 1825.

Murray
v.
Coster.

forth certain facts in support of their plea. This, though it be technically called a plea and answer, is, in fact, no answer to the bill. The whole amounts only to a plea ; and so far from being an answer, it is but a claim, on the part of the appellants, to be exempt from any obligation to answer.

After it has been decided that they are not entitled to this exemption, how do they comply with the order to make a full and perfect answer? They do it in no other way, than by again setting up their right to be exempt from answering; and attempting to support that right by allegations in explanation or contradiction of their former averments. In the one case, they set up the statute by plea, and in the other by answer. But, in truth, they are, in the latter, but repeating their former defence. The first and second answers are in fact the same. They both insist that the appellants ought not to be compelled to answer. It is not possible, in my opinion, that this variance in form can so essentially change the effect of two things between which there is no substantial difference.

Suppose the appellants had, under the order to put in a full and perfect answer, again pleaded the statute, and that in other respects their second answer had been as it now is, I presume it would not be contended for a moment, that they had complied with the order. In the first and second answer, so far as respects the statute, they put it forward as a bar, substantially in the same words ; but in the former instance they claim the benefit of it as a plea, and in the latter " they pray that they may have the benefit of the said statute in the same manner, and to the same extent, as if they had pleaded the said statute in bar to the relief, discovery and account sought for, and prayed in the said bill."

I think, therefore, the Chancellor was well warranted in saying as he has done in his opinion, " that the second answer was nothing more, in substance and effect, than a repetition of the plea of the statute of limitations, after that plea had been overruled, and the decretal order overruling it, requiring the defendants to put in a full and perfect answer to the bill, affirmed in the Court of Errors."

This reasoning brings me to a conclusion which enables

NEW YORK, me to render my judgment in this case. But I should not
June and treat the distinguished counsel who were engaged in this
July, 1825. case with due respect if I did not more particularly notice

Murray their learned and elaborate arguments, and the authorities
v. they cited. I have looked into all the cases to which we
Coster. were referred, that were within my reach, and I can find no
authority that appears to me inconsistent with the opinion
I entertain.

    I admit, as has been said in our own Courts, as well as
in the English Courts, that the statute of limitations may
be a very conscientious plea ; and I admit that it may be so
in this case. But if it be, its conscientiousness must arise
from matters not disclosed by the pleadings. I agree with
a senator who, in giving an opinion in this case on a former
occasion, said, that the claim on the part of the respondents:
as presented to the consideration of the Court, addresses it-
self to the moral sense in a character of strong and pre-
vailing equity ; but I admit, as he did, that the appellants
are entitled to the benefit of this defence, however techni-
cal it may be, if founded upon principles which are estab-
lished for the government of a Court of Chancery.

Not true, as     The position taken by the appellants' counsel, and in
a general rule, support of which many authorities were cited, that after a
that when a
plea is overru- plea is overrruled, a defendant may insist on the same mat-
led, the same
matter may ter by way of answer, cannot be true as a general rule, and
be insisted on in the full meaning of the terms in which it is expressed.
by answer.
For example, it cannot be contended that one who has in
due form pleaded the statute of limitations, and whose plea
has been overruled, can answer that he had not promised
within six years.

    I take the rule and the meaning of the authorities to be
this : that where a matter which might be a sufficient bar
has been informally pleaded, and the plea has been over-
ruled on that account, the defendant may, with leave of the
Court, insist on the same matter by way of answer. Where
a plea is overruled for some informality or insufficiency in
the plea itself, or in the answer to support the plea, then the
(g) Finch v. matter pleaded, in the language of the books has never un-
Finch, 2 Ves.
Sen. 491. dergone the judgment of the Court ;(g) that is, the Court

has never decided that the matter on which the party intended to rely, might not be a bar. The judgment of the Court, in such a case, applies only to the form. But where a plea is overruled, on the ground that the party had placed himself or that he stood in such a situation that the matter pleaded could not be a bar, in my opinion, a defendant will never be allowed again to bring the same matter before the Court, by way of answer. And even where the plea is overruled for want of form, I apprehend that a defendant cannot insist upon the same matter in his answer without leave. The reason of imposing upon him the necessity of asking this leave is, that the Court may grant it or not, as it may understand that the plea was overruled for defect of form, or because the matter insisted upon could not, however it might be put before the Court, be a bar.

So in the case above cited, of *Finch* v. *Finch*, the language of the Lord Chancellor is, " the defendant would not be precluded from insisting on the same matter in his answer, for the matter, (that is, whether what the party intended to rely upon would be a sufficient bar or not,) had not undergone the judgment of the Court."

In the case of *The East India Company* v. *Campbell*,(h) Lord Hardwicke says, " a plea may be overruled as a plea of purchase, for want of form, as covering too much, and yet it may be insisted on in the answer."

The case of *Stephens* v. *Gaule*,(i) which was much relied upon by the learned counsel for the appellants, seems to me to be entirely reconcileable with the above mentioned cases, which were also cited by him. The report is very short, and, it must be acknowledged, not very explicit.

The defendant had not stated in her plea that her husband, under whom she claimed as a purchaser without notice, had or pretended to have title, or that he was in possession, which is necessary to support a plea of this nature. The plea, therefore, was insufficient and informal, and was overruled on that account. She afterwards answered, and again insisted that she was in as a purchaser without notice, but stated that her husband was in possession, and claimed to be so by descent from his mother. Lord Chancellor King

NEW YORK.
June and
July, 1825.

Murray
v.
Coster.

Where the matter pleaded is adjudged not to be a bar, this can never be done; and where it is overruled for defect of form, then only by special leave of the court.

(h) 2 Ves.
Sen. 247.

(i) 2 Vern.
701.

NEW YORK,
June and
July, 1825.

Murray
v.
Coster.

allowed the answer. This case, then, is one where the *plea* and not the *matter* of the plea had undergone the judgment of the Court. It will be observed, that in this case there was nothing in the second answer inconsistent with what the widow had set up in her plea and answer. Had she in her first answer admitted notice or want of consideration, or any other fact that would have shown that she was not entitled to protection as a purchaser, would she have been permitted to set up a defence to which she had shown she was not entitled ?

How does it stand as to the case which we are deciding ? The plea of the appellants was in due form ; but in their answer they stated facts which, in the opinion of this Court, showed they were not entitled to the benefit of the statute. They asked this Court for permission to amend their answer, but were refused ; because, as the Chief Justice said, they had made admissions which no amendment could cure. This Court has, then, decided on the matter of their plea. It was overruled, not for informality, but because, after what they had said in their first answer, the statute, according to the judgment of this Court, could never be a bar. This, then, was *res adjudicata,* which the appellants cannot, in my opinion, be permitted again to bring into question.

It will be perceived, that if my view of this case be correct, there is no necessity for examining several questions, the discussion of which occupied much of the time of the Court on the hearing.

Whether a
defendant
may, by an-
swer, refuse to
answer.

(j) 4 John.
Ch. Rep. 215.

It was contended by the counsel for the respondents that a defendant cannot refuse to answer, by answer ; and that if he submits to answer at all he must answer fully. It must be admitted that these are general rules ; but it must also be conceded that there are many exceptions to them. In the case of *Philips* v. *Prevost,*(j) Chancellor Kent allowed the defendant to insist, by answer, on lapse of time as a bar to the account, discovery and relief prayed for by the bill, on the ground that in that case the statute of limitations could not have been pleaded ; and that this defence could not have been made otherwise than by answer. He says, " there cannot be any inflexible rule upon this subject. The reason and convenience of the case must determine when and

how far the application of the general rule is to be control-led." The counsel for the respondents has, with great learning and ability, undertaken to point out all the exceptions which are admitted to the above mentioned rules.  I will not venture to say, that the case in question falls under any of these exceptions.  I am happy to think myself relieved from the necessity of giving any opinion on points upon which Lord Eldon and Chancellor Kent have declared it impossible to reconcile the numerous authorities. If this were an original answer, then it it would be incumbent on us to consider what Ld. Eldon, in *Shaw* v. *Ching*,(*k*) calls "this distracted point;" but if we confirm the former opinion of this Court, that the appellants, by their first plea and answer, were precluded from setting up the statute of limitations as a bar to the account, discovery and relief sought by the bill, we have only to decide that the second answer does not comply with the order of the Chancellor, confirmed by this Court, that the appellants should put in a full and perfect answer.

For the same reasons, I do not find myself called upon to notice, although I have examined, the many cases which were cited as to the admissions of the defendant which are relied upon to take the case out of the statute.  That no advantage shall be taken of offers made by way of compromise ; that a party may, with impunity, attempt to buy his peace are well established rules of law,(*l*) to which our reason and our feelings at once assent.  But I am not prepared to admit that what a party may state as a fact, though the statement may be made in the course of a negotiation for a compromise, or may be connected with an offer to purchase peace, will not be as binding as if the fact had been disclosed in any other way.  If a man says to me, I do not admit that I owe you any thing, but rather than be sued I will give you a hundred dollars, it would be most unjust to suffer me to avail myself of this offer, to recover against him.  But if one tells me, it is true, I justly owe you a hundred dollars, and will give you fifty if you will give up your debt, I apprehend there is no rule of law so absurd and unjust as to prevent my availing myself of my debtor's confession, because he connected with it an offer of compromise

NEW YORK,
June and
July, 1825.

Murray
v.
Coster.

(*k*) 11 Ves.
306.

How far an offer of compromise, or admissions connected with it, are evidence.

(*l*) 2 Campb.
Rep. 106, note.
13 John. Rep.
288.

So, if the appellants have admitted by their answers, that they had the linens, and that they have never accounted or paid for them, in my opinion, they are bound by this admission, though it may been made in the course of a negotiation for a compromise, and though they may have understood that the negotiation related to the breaking up the voyage of the Egeria, or to a claim of the respondents for the proceeds of the linens.

But this is not, in my opinion, now open for discussion, because this Court, of the last resort, has decided that the appellants, in their first answer, did make such an admission as the respondents were at liberty to avail themselves of, and such as precluded the appellants from sheltering themselves under the statute of limitations.

Of the 7th exception. The master's report as to the seventh exception, allowed by the master, and also by the Chancellor, seems to have been acquiesced in by the appellants. For, although one of their points be, that there was no foundation for the allowance by the master of the seventh exception, yet I do not recollect that a word was said on the hearing to this point, by either of the counsel. I presume that this exception was passed over, because there was no room to question that the parts of the answer to which it refers were, as the master reports, irrelevant. I am of this opinion. I think the Chancellor was right in disallowing all the exceptions to the master's report ; and I am therefore in favor of affirming his decree.

Colden, senator, for affirmance.

BOWMAN, BRAYTON, BURROWS, BURT, CLARK, CRAMER, DUDLEY, EARLL, ELSWORTH, GARDINER, HAIGHT, KEYES, LAKE, LEFFERTS, McCALL, McINTYRE, McMICHAEL, MORGAN, THORN, WILKESON, WOOSTER, *Senators*, concurred.

Points to be discussed. SAVAGE, Ch. J. (after stating the case.) There are three questions necessary to be discussed, to arive at a satisfactory conclusion in this cause.

*First.* The plea having been overruled, were the appellants at liberty to insist on the same matter by way of answer ?

*Second.* If they answer at all, were they not bound to answer fully? and

*Third.* Does the answer contain matter which bars the relief sought?

I will here premise, that when the plea was overruled by the Chancellor, he discussed and decided two points. 1. That the case did not come within the exception to the 5th section of the statute of limitations, as an action concerning the trade of merchandize, between merchant and merchant, their factors or servants, (1 R. L. 186;) and 2. That it was a clear case of trust; and therefore the statute was no bar. On this last point the plea was overruled. When the cause first came here, Spencer, Ch. Justice, delivered the opinion of the Court, in which the point first decided by the Chancellor is concurred in, on the ground that the exception in the statute is not applicable to a case where all the items of an account are one side, and that the reason and principle of the exception embraced open and current accounts where there were mutual dealing and mutual credits. On the second point, the decision of the Chancellor was overruled; and the doctrine of Ld. Hardwicke, (2 Atk. 612,) was recognized and approved, that *a trust is, where there is such a confidence between parties, that no action at law will lie.* It was added, that in this case there was a clear remedy at law, and had the objection been made, the bill would have been dismissed. It was a case, therefore, in which the party had a right to plead the statute. The decree of the Chancellor was however affirmed, on the ground that the answer accompanying the plea admitted the claim to be subsisting and unsatisfied; and thereby defeated the operation of the statute.

<span style="float:right">The course
which this case
formerly took,
and the points
decided.</span>

When the answer now under consideration came before the Chancellor, he allowed the exceptions to it upon the ground that the same matter had undergone the judgment of the Court, in the shape of a plea.

<span style="float:right">Ground on
which Chan
cellor allowed
the exceptions.</span>

1. This brings me to the examination of the first question I propose to discuss, to wit, whether the appellants were at liberty to insist on the same matter by way of answer, which had been overruled by way of plea.

NEW YORK,
June and
July, 1825.

Murray
v.
Coster.

General object of pleading.
Course of pleading in chancery.

Whether, after matter is overruled in a plea, it may be insisted on by ~~~er.

The object of pleading, in any Court, is to present the complaint of the plaintiff, and also the grounds on which that claim is resisted by the defendant, that the Court may decide upon the precise point in issue.

If the bill is supposed to contain no cause of action, the defendant may demur. If he does not choose to rely upon the weakness of the plaintiff's title, but wishes to set up some cause for which the suit should be dismissed, delayed or barred, he may plead or answer. If a demurrer is overruled, he must make a new defence, not by demurrer, to the same extent as the former, but he may defend himself by plea or answer. After a plea has been overruled, defence may be made by demurrer, by new plea, or by answer ; but the new plea should not contain the same matter as the plea overruled. Such a course would be calling upon the Court for a rehearing, contrary to its settled practice. (Mitf. Plead. 11, 12, 13, 14.)

But it is contended by the counsel for the appellants, that though the plea be overruled, the same matter may be insisted on by way of answer ; and this proposition is laid down in a work of high authority, (Mitf. Plead. 3 ed. 248.) which cites in its support, 2 Ves. 492, and 1 Atk. 450. The latter is the case of *Suffolk* v. *Green*, decided in 1739, which has no connection with this question, any farther than what arises from analogy existing between a demurrer and plea. Ld. Hardwicke overruled a demurrer on the ground of its insufficiency, but without prejudice to the defendant's insisting upon the matter relied on by way of answer. In *Finch* v. *Finch*, (2 Ves. Sen. 491,) decided in 1752, the first answer was reported insufficient ; the defendant submitted to make a further answer, which was also reported insufficient; and the question was whether, by submitting to answer further, without excepting, the defendant had precluded himself from insisting on the same matter by his second answer. Ld. Hardwicke held he was not, and assigned as a reason, that the matter had not undergone the judgment of the Court. He adds, it is not like a second demurrer, or dilatory, or a second plea, which cannot be put in a second time if overruled; yet, notwithstanding, the Court frequently allows

the defendant, after a plea has been overruled, to insist on the same matter by answer which was overruled as a plea; and that comes on the merits at hearing the cause.

To support this doctrine of Ld. Hardwicke, the reporter refers to *Harris* v. *Ingleden*, (3 P. Wms. 94.) In that case a bill was filed by certain creditors of William Ingleden to compel a sale of his real estate devised subject to the payment of his debts. One of the defendants pleaded that he was purchaser for valuable consideration, but omitted in his plea to deny notice of the will of William Ingleden. And it was argued that the plaintiff having joined issue on the plea, he had admitted it to be good; that had the plaintiff set it down to be argued without taking issue, the want of a denial of notice would have been a good exception; and it was argued that, if it were otherwise, the defendant might be tricked by the plaintiff's replying to it, and he could do no more than prove it; whereas if such plea had been set down to be argued and overruled, the defendant might still have helped himself by putting all his defence in his answer. The only answer made by Sir Joseph Jekyl, Master of the Rolls, to this argument, is, that, in case a plea be replied to, the defendant need only prove his plea; and here it is the plaintiff's own fault, for he had it in his election, to have it set down to be argued; wherefore, if the defendant proves what he has pleaded, the bill is to be dismissed against him with costs. The Master of the Rolls seems to adopt the reasoning of the counsel, and supports the general proposition that matter overruled as a plea may still be urged in the answer; and the plea in the case of *Harris* v. *Ingleden* is a strong instance to show the reasonableness of the rule. The plea was admitted to be defective, because the defendant had not denied notice of the will of Ingleden, which subjected his estate to the payment of his debts. Had that plea been overruled for that cause, it would certainly have been highly unjust, that he should not have an opportunity to supply that fact in his answer. This same doctrine is asserted by the Court of Exchequer, in *East India Co.* v. *Campbell*, (1 Ves. Sen. 247.) And in *Hoare* v. *Parker*, (2 Cox, 224,) where a plea overruled was insisted on by way of answer, the Ld.

Chancellor asked if there were any instances, after a plea overruled, of the same thing being allowed to be insisted upon by answer; and to show that it might be done, Scott cited *Harris* v. *Ingleden*, and *Finch* v. *Finch;* but his Lordship said those were cases of bills of relief, but he knew no instance of the same being done in bills of discovery only; thus admitting, that in bills of relief such was the proper and common practice. In the case under consideration, relief is asked for. It is not a case of discovery. None was necessary. The respondents had all the evidence they wanted. (Vid. also *Stephens* v. *Gaule*, 2 Vern. 701.)

Whether,
when a defendant submits
to answer, he
must answer
fully.

2. It is contended, however, that when a defendant submits to answer, he must answer fully. In the English Courts, this question has been decided both ways, and by very learned and highly respectable Chancellors and Judges. The late Chancellor Kent has reviewed most of the cases in *Methodist Epis. Church* v. *Jaques*, (1 John. Ch. Rep. 73,) and *Phillips* v. *Prevost*, (4 id. 209.) He came to the conclusion, that if the defendant submits to answer, he must answer fully; but that the rule was subject to exceptions. The only two which he mentions in *Method. Epis. Ch.* v. *Jaques*, are, that of an innocent purchaser, as in *Jerrard* v. *Saunders*, (2 Ves. Jun. 454;) and the denial of a co-partnership, as in *Jacobs* v. *Goodman*, (3 Br. Ch. Rep. 205.) To these exceptions he added another in *Phillips* v. *Prevost*, to wit, where the plaintiff has no title.

In the Equity side of the Court of Exchequer, I understand the rule is, and always has been, that a defendant may answer in part, and object to a further answer. It is in the Court of Chancery alone where the conflict has existed between what has been called the old and the new rule. The whole dispute is about the form of pleading, and if once settled, it is a matter of very little moment which way it is settled. The objections stated by Ld. Eldon to the new rule in *Somerville* v. *Mackay*, (16 Ves. 387,) arise out of the practical inconvenience, that, in Chancery, the defence is not judged of, in the first instance, by the Court itself, but goes to a master upon exceptions to the answer, and then to the Court upon exceptions to the

NEW YORK,
June and
July, 1825.

Murray
v.
Coster

report; in my judgment, a very useless ceremony, and a practice which calls for correction. The late Chancellor, upon the able review which he has given of this question in *Phillips* v. *Prevost*, has adopted, as a general rule, that established by Ld. Thurlow, in *Cookson* v. *Ellison*, (2 Bro. Ch. Rep. 252,) where the plaintiff had made one a party defendant who had no interest, and was a mere witness. He did not demur, but answered part, and was therefore compelled to answer fully. Yet, in *Green* v. *Winter*, (cited 4 John. Ch. Rep. 214,) the Chancellor virtually overruled this very case. The defendant had disclaimed all interest, and the only difference was, that Ellison had answered part; but neither had demurred or pleaded. In the latter case, the Chancellor very properly decided, that the defendant was not bound to answer further. He adds, "I could not perceive the propriety, or feel the necessity of requiring a further answer merely to serve the curiosity or convenience of the plaintiff. Nor can I perceive the good sense of requiring long accounts and schedules from a defendant, when a defence is set up in the answer which meets the title. If the matter of defence should fail, the defendant might then be required to answer further." In the same case he remarks, that "the defendant may insist upon the benefit of the statute of limitations in his answer as well as by plea." That this has been repeatedly done, he cites *Lacon* v. *Briggs*, (3 Atk. 105;) *Prince* v. *Heylin*, (1 Atk. 493;) and Eq. Drafts. 389.

If, therefore, the general rule first laid down in *Cookson* v. *Ellison* be established, with its exceptions already admitted, another exception should be added, to wit where a defence is set up which meets and controverts the title. Take for an example this very case. I proceed on the supposition that the statute of limitations is well pleaded. Where can be the necessity or propriety of going at length into accounts or dealings of long standing, when a recovery is barred by lapse of time? For whose benefit is such an investigation to be instituted? It is not pretended that any discovery is wanted to aid a suit at law; and if it were, I understand the rule to be now settled, that matter which bars the relief, bars also the discovery.

It was urged upon the argument, by the respondent's counsel, that if the general rule were, that a defendant might avail himself by answer of the same matter overruled as a plea, yet it ought not to be permitted in this case, because a motion was made here, and denied, the effect of which would have been an amendment similar to the one now sought for. In my judgment the result of that motion should have no influence in deciding this question of pleading. The Court merely expressed an opinion on the plea then before it, but did not prejudge the further pleadings nor the rights of the parties. If the result of that motion should have any effect, it should be in favor of receiving the answer: as otherwise the appellants may, through the inadvertence of counsel, lose the benefit of a defence to which they are entitled by the laws of the land.

3. I shall, therefore, proceed to inquire whether the answer now put in contains any defence to the claim of the respondents. His honor, the late Chancellor, considered it nothing more than a repetition of the former plea of the statute of limitations, which had been overruled. If he is correct in this position, his decree should be affirmed. A comparison of the two answers will enable us to form an accurate opinion on that point.

That part of the first answer, which this Court considered an admission of the debt, is the offer made by the appellant's counsel to pay one-third of the proceeds of the linens, explicitly stating at the same time, that they were discharged from all liability by virtue of the statute, and that they reserved the right to avail themselves of the statute in their defence if the offer was refused. This was thought not to come within the rule laid down by Spencer, J. in *Sands* v. *Gelston,* (15 John. Rep. 571,) who says, "though indeed the defendant may admit that what the plaintiff claims as a debt has never been paid, if he protests against his liability, it would be an outrage on common sense, to infer a promise to pay, in the face of his denial of his liability to pay."

In the present answer the appellants have presented the same matter, accompanied by these other explanations : **1.** A denial of their admission of any claim of the respondents,

2. That in the conversation which led to the attempt to compromise, the subject of the linens was not mentioned; and that the interview between the counsel of the parties had relation to a supposed claim for the breaking up the voyage of the ship Egeria.    3. That the appellants instructed their counsel to do no act which might be construed into any admission of a claim by the respondents.    4. That the offer was intended for the purpose of putting an end to any claim against the defendants, or either of them; and for purchasing their peace, and of compromise, and for no other purpose.    5. They expressly deny an intention to admit any liability to pay any claim on account of the linens.

It is, however, contended, that the claim is still admitted, and the second answer does not, in effect, vary from the first.   The objection taken by Spencer, Ch. J. in giving the opinion of this Court upon that answer was, that there was an offer to pay the whole demand ; and no denial of the justice of the claim.   Here the appellants enter their protest against the validity of the demand ; and say, under oath, that the offer was not to pay the whole demand ; but to compromise a pretended claim for breaking up a voyage for the purpose of purchasing their peace.   I know of no case which has gone so far as to decide, that an offer made under such circumstances, and with such explanations and reservations, and when so much pains were taken to negate the idea of liability, should be construed into a promise to pay.   And it would be strange indeed, if defendants, understanding their rights, and having the benefit of counsel, should promise to pay a demand, when in the same breath they deny their liability.   Upon the best consideration I am able to give the subject, I can see no ground for the allegation, that this answer contains an admission of the demand.

If Courts can, by one refinement after another, entirely fritter away the statutes of the state, further legislation will be useless.

I am of opinion that the decree of the Chancellor be reversed ; because, 1. The appellants had a right to put into their answer, among other things, the same matter which, standing alone, was overruled as insufficient in a plea.   2.

*[margin:]* NEW YORK, June and July, 1825.

Murray v. Coster.

The chief justice concludes that the decree should be reversed; for 3 reasons.

That their answer containing a bar to the relief sought, is a bar to the discovery ; and they may, therefore, object to answer fully to the charges in the bill. 3. The answer under consideration contains a complete defence to the complaint of the respondents.

CRARY, Senator, concurred with the Chief Justice in the result of his opinion. He was not prepared to go into the subject ; but felt it his duty to protest against what appeared to him, a positive violation of an existing statute. Such he felt still bound to consider the statute of limitations ; though it had been greatly broken in upon by our Courts. He had read and listened with attention to the opinions of Judges in all the various stages of this cause; and he acknowledged their learning. He had seen the appellants begin with a clear defence under the statute of limitations. They retained counsel from the very first moment to manage that defence, and instructed them not to waive it; though they were willing that they should buy peace. With a view to this object they negotiated in the spirit of their instructions. They have struggled at every stage to preserve the defence of the appellants unimpaired ; but our Courts have found themselves so crippled and impotent, as to be unable to give the appellants the benefit of it. Enough has been got out of them from term to term, in answers on oath, drawn under the advice of counsel, urging the defence too at every step, to defeat that defence. This is the ground assumed by the respondents ; but it was a ground which he could not yield. He felt that it was equivalent to a complete repeal of the statute.

GREENLY, LYNDE, and REDFIELD, *Senators,* concurred.

A majority being for affirmance, it was thereupon, ORDERED, ADJUDGED and DECREED, that the decree of his honor the Chancellor in this cause be affirmed, with costs to the respondents to be taxed, upon the appeal to this Court, and that the appeal, record and proceedings be remitted, &c.