William L. Misner, Respondent, *v.* William H. Strong et al., Appellants.

1. Contract —Verbal Agreement to Lend Credit. The performance of a verbal agreement that if the promisee would lend his credit and help negotiate a loan, he should have a third interest in an unfinished vessel, vests title in him to such interest.

2. When Equity Has Jurisdiction to Determine Ownership of Personal Property in an Action for an Accounting. A court of equity has jurisdiction of an action by the owner of an undivided one-third interest in a vessel for an accounting of its profits; and where his title to the vessel is disputed, to determine the question of ownership and then proceed with the accounting.

3. Evidence — When Testimony of Compromise Offer Is Harmless. In such an action the reception in evidence of an admission by one of the defendants, for the purpose of a compromise, that he had offered a one-fifth interest in the vessel, assuming it to have been erroneous, is harmless where he subsequently testified on the trial to the same effect and the referee did not follow the admission in his findings, but found a different interest depending wholly upon other evidence.

*Misner* v. *Strong*, 88 App. Div. 621, affirmed.

(Argued January 18, 1905; decided March 14, 1905.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 27, 1903, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as, material, are stated in the opinion.

*John B. Richards* and *Harvey L. Brown* for appellants. There is no evidence to support the alleged agreement to the effect that if the plaintiff procured a loan of the sum of $5,000, which could be used for the purpose of completing the repair of and rebuilding the vessel, the defendant William H. Strong would convey and set over unto the said plaintiff, William L. Misner, an undivided one-third interest in the said vessel. (1 Pars. on Cont. [8th ed.] 475 ; *Justice* v. *Lang*, 42 N. Y. 493; *Stoddart* v. *Hart*, 23 N. Y. 556; *Garner* v. *Bird*, 57 Barb. 277 ; *Herrick* v. *Starkweather*, 54 Hun, 532; *Curtis* v. *Gibbs*, 7 Misc. Rep. 590; *Crouse* v. *Frothingham*,

97 N. Y. 106 ; *Kayser* v. *Arnold*, 16 N. Y. S. R. 105 ; *Shakespeare* v. *Markham*, 72 N. Y. 400 ; *Prince* v. *Watts*, L. R. [20 Eq.] 492 ; *Roberts* v. *Smith*, 4 H. & N. 315.) The alleged agreement was never consummated. The legal status of ownership can only be deducible from facts proven, and the preliminary facts upon which it is dependent must be proven and found before that conclusion follows. (*Scofield* v. *Whitelegge*, 49 N. Y. 259 ; *Sheridan* v. *Jackson*, 72 N. Y. 170 ; *Adams* v. *Holley*, 12 How. Pr. 336 ; *Thomas* v. *Desmond*, 12 How. Pr. 321 ; *Queen City Bank* v. *Hudson*, 8 App. Div. 27 ; *Brackett* v. *Barney*, 28 N. Y. 333 ; *Kochler* v. *Hughes*, 148 N. Y. 507 ; *Ten Eyck* v. *Whitbeck*, 156 N. Y. 341.) Even in equity this action cannot be maintained to compel Strong to carry out the alleged agreement to give Misner a third and for an accounting against him and his grantees for the earnings of the boat in the interim. Courts will not usually enforce specifically a parol contract or one for the sale of personal property, but leave the suitor to his action at law. (3 Pars. on Cont. 364.) The contract must be definite and certain. (*Shakespeare* v. *Markham*, 72 N. Y. 400 ; *Stanton* v. *Miller*, 58 N. Y. 192 ; *Crouse* v. *Frothingham*, 99 N. Y. 306 ; Fry on Spec. Perf. §§ 48, 203, 229 ; *Taylor* v. *Partington*, 7 De G., M. & G. 328 ; 1 Foublanque's Eq. ch. 3 ; *Maher* v. *Garry*, 3 App. Div. 480 ; *Crosdale* v. *Lanigan*, 129 N. Y. 604.) There must be mutuality. In other words, in a case where defendant could not enforce specific performance against the plaintiff the latter has no such remedy against the defendant. (Add. on Cont. § 182 ; Fry on Spec. Perf. §§ 286, 287 ; Adams Eq. 82, 193 ; 2 Story's Eq. Juris. § 723 ; *Marble Co.* v. *Ripley*, 10 Wall. 339, 358, 359.) Equity will not aid a suitor where the contract he seeks to enforce is hard, inequitable, or where the consideration is grossly inadequate. (*Matthews* v. *Terwilliger*, 3 Barb. 50 ; *Cuff* v. *Dorland*, 55 Barb. 481 ; *Margraf* v. *Muir*, 57 N. Y. 155 ; *Burling* v. *King*, 66 Barb. 633 ; *Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311 ; *Miles* v. *D. F. & I. Co.*, 125 N. Y. 294 ; *Stokes* v. *Stokes*, 155 N. Y. 590.) It was

error to admit evidence of the offer of compromise made by Strong and Madden at the meeting in Jackson's office. (*Slingerland* v. *Norton,* 58 Hun, 578 ; *Tennant* v. *Dudley,* 144 N. Y. 504 ; *Smith* v. *Satterlee,* 130 N. Y. 677 ; *Payne* v. *F. S. S., etc., R. Co.,* 8 J. & S. 8 ; *Doyle* v. *Levy,* 89 Hun, 350 ; *Williams* v. *Thorp,* 8 Cow. 201.)

*Moses Shire* for respondent. This action was properly brought. It is an equitable action to have an adjudication as to the interest of the plaintiff and the defendants in the vessel in question and for an accounting between the parties of the vessel's earnings. (*Andrews* v. *Betts,* 8 Hun, 322 ; *Dyckman* v. *Valiente,* 42 N. Y. 549 ; *Starbuck* v. *F. L. & T. Co.,* 28 App. Div. 272.) No error was committed in the admission of evidence. (*Sweet* v. *Henry,* 175 N. Y. 268.)

VANN, J. The case made by the complaint was that on the 24th of March, 1899, the plaintiff and two of the defendants owned a steamer called the "N. K. Fairbanks," as tenants in common, each owning a third thereof ; that during the season of navigation of 1899 said steamer, then called the "Eliza H. Strong," under the management of one of the defendants earned large sums of money ; that the defendants not only refused to account to the plaintiff therefor, but denied that he was the owner of any interest in the vessel or that he was entitled to any part of the moneys earned by her. The relief demanded was that the plaintiff be adjudged the owner of an undivided third of the vessel ; that an accounting be had between him and the defendants ; that they be decreed to pay him such sum as should be found due by reason of the earnings ; that the vessel be sold and one-third of the proceeds paid to the plaintiff and the balance to the defendants according to their respective interests. The defendants pleaded in substance a general denial and made no demand for affirmative relief.

The referee found that from and after the 24th of March, 1899, the plaintiff was the owner of an undivided third of the vessel ; that during the season of navigation of 1899 the ves-

sel earned $27,363.63, but that the defendants had paid out for rebuilding her, running expenses, insurance, etc., the sum of $35,050.31; and that the defendants had at all times refused to account to the plaintiff for the moneys so earned. On stating the accounts between the parties he found that the plaintiff was indebted to the defendants to the extent of one-third of the difference between the receipts and disbursements, amounting to $2,562.23. As a conclusion of law he found that the plaintiff was entitled to a judgment decreeing that he was owner of an undivided third of the vessel, with costs. The plaintiff, therefore, had judgment establishing his ownership. He also had an accounting, but, as the balance was against him, of course, he could recover no part of the earnings as they were all expended in paying for the vessel, the expense of rebuilding, running, etc. It is to be observed, however, that through his part of the earnings and the balance found against him, he has been required to pay one-third of the entire cost of the vessel and of all expenditures connected with her.

There was evidence tending to show that after the defendants, or one of them, had purchased the hull of the vessel, which had been burned to the water's edge, they proceeded to rebuild her, and on reaching a point where their money and credit were exhausted, applied to the plaintiff for relief. According to the testimony of the plaintiff, corroborated by that of other witnesses, a verbal agreement was thereupon made that if he would lend his credit to the extent of $5,000 and help the defendants procure a loan for that amount they would give him a one-third interest in the vessel and that the loan should be paid out of her earnings if they were sufficient for the purpose. On March 24th, 1899, a mortgage on the vessel was given to a bank to secure the loan. It was signed by the plaintiff and the defendants and recited that they were the sole owners of the vessel. A written proposal for the loan signed by the plaintiff and the defendants stated that they were rebuilding the boat and that the money was needed to complete her. She was insured in the name of the plain-

tiff and defendants jointly, and contracts were made in their names for finishing her. The plaintiff mortgaged his individual real estate to secure the loan and the bills for materials and labor were paid by the checks of the plaintiff out of the proceeds of the loan. On the 26th of May, 1899, the defendant Strong, who then appears to have owned all of the vessel except the part owned by the plaintiff, executed a bill of sale to the plaintiff of an undivided fourth of the vessel and filed it for record in the United States Custom House at Buffalo. This, however, was without the knowledge or consent of the plaintiff who never accepted it, as he claimed he was entitled to a one-third interest. After March 24th, 1899, the plaintiff spent a large part of his time in working on the vessel, until she was finished.

There was other evidence to support the theory of the plaintiff, and there was evidence introduced by the defendants to support the theory that they were the sole owners. The referee, upon sufficient evidence, found in favor of the plaintiff and the Appellate Division affirmed his judgment, all of the justices apparently being of the opinion that the action was well brought and well decided, but one of them dissented upon the ground that the referee erred in a ruling relating to evidence.

A court of equity has jurisdiction of an action for an accounting and to establish the facts which entitle a party to that relief. If the plaintiff owned an interest in the vessel as a tenant in common he had a right " to an account of all the earnings and profits of the ship by all the part-owners." (Story on Partnership, § 449.) " Cases of account  *  *  * between part-owners of ships and between owners of ships and the masters fall under the like considerations. They all involve peculiar agencies, like those of bailiffs, or managers of property, and require the same operative power of discovery and the same interposition of equity. Indeed, in all cases of such joint interests, where one party receives all the profits, he is bound to account to the other parties in interest for their respective shares, deducting the proper charges and expenses."

(1 Story's Eq. Jur. § 466, citing Abbott on Shipping, B. 1, ch. 3, §§ 4, 10, 11, 12; *Doddington* v. *Hallett*, 1 Ves. Sr. 497; *Ex parte Young*, 2 Ves. & Beam. 242; *Drury* v. *Drury*, 1 Ch. Rep. 49; *Strelly* v. *Winson*, 1 Vern. 297; *Pulteney* v. *Warren*, 6 Ves. 73, 78; *Field* v. *Craig*, 8 Allen, 357.) As the right of the plaintiff to an accounting was denied by the answer, upon the ground that he was not a part owner, the first duty of the referee was to settle the question of ownership and then proceed with the accounting. (Id.; *Dyckman* v. *Valiente*, 42 N. Y. 549; *Mumford* v. *Nicoll*, 20 J. R. 611; Pomeroy's Eq. Jur. §§ 186, 1391, 1421.)

The verbal agreement that if the plaintiff would lend his credit and help negotiate a loan for $5,000 he should have a third interest in the vessel, was performed by him, and such performance vested title in him, which was recognized by the defendants for a while, but repudiated when they thought he had received too much. The vessel was neither enrolled nor in the water, but was upon stocks and in process of reconstruction when the agreement was made and carried into effect. She then had no record under the shipping laws, for she had been destoyed, except as to her hull, and required a new enroll.nent, which, upon completion, she received, as well as a new name. Under these circumstances there was no necessity for a written transfer of title, as she was not in existence as a completed vessel capable of enrollment. An unfinished vessel can be transferred by verbal agreement and the full performance thereof, the same as any other chattel or tangible article of personal property. The Statute of Frauds was not available as a defense because it was not pleaded. (*Crane* v. *Powell*, 139 N. Y. 379.) Moreover, the plaintiff was in the position of a purchaser who had paid the whole of the purchase money down, for he did all that the contract required as the entire consideration on his part. He was not to pay money for his share of the vessel, but was to do a certain act and he did it. The statute is satisfied by money paid or money's worth received in payment. Its object is "to have something pass between the parties besides mere words, and,

hence, to constitute a payment of purchase money within the
spirit of the provision, the buyer must part with something of
value by way of consideration." (*Artcher* v. *Zeh*, 5 Hill, 200.)

Assuming that the referee erred in receiving evidence of
a conversation between the plaintiff and defendants during
an effort to compose their differences, we think that the
error did no harm under the circumstances. The evidence
objected to was that at an interview between the parties, dur-
ing which a compromise was discussed, the plaintiff asked
what interest they intended to give him, and the answer was
one-fifth. The plaintiff said the agreement was one-third and
the defendants said that was too much. As the trial was before
a referee, in effect sitting as a chancellor, the liberal rule that
prevails in courts of equity should be applied if the facts will
permit. (*Sweet* v. *Henry*, 175 N. Y. 268.) The evidence
simply tended to prove that the defendants had stated in pri-
vate conversation when a compromise was expected, what they
subsequently stated as witnesses at the trial. When Mrs. Mis-
ner, the wife of the plaintiff and sister of the defendant
Strong, was upon the stand she testified to various admissions
made by him to her. She said that on one occasion when they
were looking at the boat she remarked, " Will, Ma keeps ask-
ing what interest we are to get in the boat; have you told
her? Don't she know ?" He said, " Well, we had talked it
over and decided they all thought a sixth would be enough
for him but I thought as he had been a good fellow, I would
give him a fifth." She said, " Well, you better do as you
agreed," and he made no reply. When Mr. Strong was on
the stand, referring to this conversation he repeated it in sub-
stance as Mrs. Misner had given it except that he denied her
last remark, to wit, " Well, you better do as you agreed."
The evidence objected to, therefore, simply anticipated what
the defendants admitted when the case was with them. In
view of this and other evidence to the same effect and of the
fact that Mr. Strong on May tenth, 1899, executed a bill of
sale to the plaintiff for an undivided fourth interest in the boat
and filed it in the custom house, we think the testimony of

an admission, even for the purpose of a compromise, that he had offered one-fifth of the vessel to the plaintiff who insisted on a third, could have had no material bearing on the result. The referee did not follow the admission in his findings but found a different interest which depended wholly upon other evidence.

I find no reversible error in the record and think that the judgment should be affirmed, with costs.

O'BRIEN, J. (dissenting). The plaintiff has recovered a judgment in this case which seems to be somewhat of an anomaly. It is not easy to discover the exact principle upon which it rests, or the department of law or equity to which it is supposed to belong. One thing is quite clear and that is that it is not an action at law, but a suit in equity of some kind or character, but the particular branch of equity jurisprudence to which it is supposed to belong is not at all clear. Perhaps the only way to arrive at any conclusion on that question is by a process of exclusion. Clearly it is not a partnership action and no element of partnership is involved or any principle of the law of partnership. It is not an action for the partition of personal property, since no relief of that kind was asked or awarded. It is not an action for the specific performance of any executory contract, since no relief of that kind was asked or granted, and the facts alleged would not justify a judgment of that character.

The subject-matter of the controversy is a boat or small steamer engaged in the navigation of the great lakes in the season of 1899, and its home and record title is at the port of Buffalo. The plaintiff alleges that on and prior to the 24th of March, 1899, he was the owner of a one-third part of this steamer or vessel, the defendants owning the other two-thirds. The principal relief demanded in the complaint is that it be adjudged and decreed that the plaintiff *is* the owner of an undivided one-third part of the vessel. The only relief granted in the decision of the learned referee who tried the cause was that the plaintiff was entitled to a judgment decree-

ing that he *is the owner* of an undivided one-third of the
vessel.

It appears from an inspection of the pleadings and decision
of the court that this was an action in equity to procure a
judgment to the effect that the plaintiff was the owner of a
particular article of personal property, to wit, a vessel navi-
gating the lakes. Neither the complaint nor the findings dis-
close just how the plaintiff acquired an interest in the vessel.
The complaint simply alleges that he had an interest or
ownership of one-third of the property and the plaintiff prays
a judgment of the court that it be decreed that he *actually
has such interest.* Disputes as to the title to personal prop-
erty do not ordinarily come within the jurisdiction of equity.
If the plaintiff actually owned and had title to a one-third
part of the vessel, he had a remedy at law for the assertion of
his right, but I am not aware of any principle of equity by
which a party claiming to be the owner of some interest in an
article of personal property can have that question tried by a
court of equity. Ordinarily that is a question that is triable
by jury. If, on the other hand, the plaintiff simply held an
executory contract for the sale to him of a third interest, it is
not very clear that a resort can be had to equity for a viola-
tion of the contract. The breach of an executory contract to
sell a vessel is the subject of an action at law for damages just
the same as in the case of an executory sale of any other arti-
cle of personal property. In this case it will be seen that the
plaintiff alleges that he is the owner of the interest described
and he demands that a court of equity adjudge that his claim
in that respect is true.

The findings of the referee will throw some light on the
real character and purpose of the action. It was found that
"Thereupon the defendant William H. Strong entered into
an agreement with the said plaintiff, William L. Misner,
whereby the defendant William H. Strong promised and
agreed that if the plaintiff procured a loan of the sum of Five
Thousand Dollars which could be used for the purpose of
completing the repair of and rebuilding the said vessel, the

defendant William H. Strong *would convey* and set over unto the plaintiff, William L. Misner, an undivided one-third interest in the said vessel." Now this is clearly a finding of an executory contract between the parties founded upon mutual promises. That is, the plaintiff was to negotiate a loan, and the defendant was then to convey a one-third interest in the vessel. The remedy for a breach of such a contract is not a suit in equity, but an action at law for damages. It was then found by the learned referee that the plaintiff did negotiate the loan and the conclusion seems to be that the defendant violated his contract and failed to convey as he had promised to do. The referee then made other findings to the effect that the defendant Strong procured the vessel to be enrolled in his own name and assumed to be the sole owner, transferring certain interests specifically to other parties than the plaintiff.

I have been unable to find any case or to discover any principle of equity that would justify the plaintiff, upon the facts of this case, in appealing to a court of equity to determine the question whether by virtue of the agreement between himself and the defendant Strong, he had become the owner of one-third of the vessel. Such an application to a court of equity must be in the nature of an experiment to find out whether a party owns a piece of personal property which he alleges in his complaint that he does own. The decision of the learned court below was not unanimous, and hence the inquiry is open in this court as to whether the judgment ordered is supported by the facts found, and as to whether the facts found have any support in the evidence. The testimony in the case is very vague and uncertain and it discloses practically but one thing and that is that there were numerous conversations between the plaintiff and the defendant Strong with reference to a project which simply was that the plaintiff should furnish a certain amount of money, say $5,000, and thereby procure an interest in the boat. He did attempt to furnish the money, but was not able to, and at the end of these negotiations, all verbal, he says in substance

that it was finally agreed between himself and the defendant that if he negotiated a loan of $5,000, which could be available for use in finishing the vessel, then he was to become the owner of a third interest. Just how a party can acquire the title to a ship at sea or a vessel on the lakes through mere verbal interviews, however numerous, without any written transfer from the owner, any delivery of the vessel, or any acts of ownership on the part of the alleged purchaser, it is quite difficult to conceive, even if the plaintiff carried out the verbal bargain which he claims to have made. But he did not. He never did negotiate or procure the loan. The loan was negotiated and procured by a man by the name of Mulhall who was paid $500 for services in that behalf. All that the plaintiff did was to become an accommodation party to a note made by two of the defendants secured by a mortgage on the vessel, which the defendants then concededly owned, and also to mortgage some real estate which the plaintiff owned, but which was not of sufficient value to enable him to raise the money himself, and the plaintiff's theory of this action seems to be that inasmuch as he signed that note as an accommodation party he became *eo instanti* the owner of one-third of the vessel. It is not claimed that he ever paid a dollar on the loan. That was paid by the defendants. Possibly a thousand dollars of it was paid out of the earnings of the boat, but these earnings belonged to the parties who owned the boat and not to the plaintiff. So the case comes to this, practically; on the plaintiff's own showing he says that the defendant agreed for no other consideration than his accommodation signature to the note, that he should have a third interest in a piece of personal property worth $30,000. If the plaintiff ever became the owner of any interest in the boat, it must have been at the moment when he signed and delivered the note which was to be negotiated at the bank. That was the final act which must have vested him with title to an interest in this piece of personal property. There is no other act disclosed by the record upon which the plaintiff relies. The defendants deny that

any such agreement was made with the plaintiff. It is quite evident from their testimony that what they expected was that the plaintiff should put some money into the enterprise, but there is no claim made that he ever put in any money of his own. The five thousand dollars were advanced by the bank, the principal security being the vessel which was then the defendants' own property. So the case as it appears in the record is substantially this: The plaintiff claims to have procured a good title to one-third of the vessel by his signature to the note which Mulhall subsequently negotiated at a bank and got $500 of the proceeds for his services. But it seems, according to the plaintiff's claim, that in addition to the large fee that was paid Mulhall, he was to receive himself for his signature to the paper one-third of a piece of personal property worth $30,000. If this is the case as disclosed by the pleadings, the proofs and the findings, and clearly it is, it would seem to me to be one of the most remarkable financial transactions that ever was presented to a court of equity for ratification or enforcement. If this case could be treated even as an action for specific performance, it is safe enough to say that no court of equity would ever decree specific performance of such an uncertain and unconscionable bargain. On the plaintiff's own claim he got title to one third of this vessel without having paid anything for it and without any writing to evidence his right. The whole arrangement disclosed by the record consists in a series of loose conversations either in the street, or in saloons or other public places which, when examined, will be found to be of the most tentative character. It may be that the defendants were entirely willing, and in fact offered to give the plaintiff an interest in the boat providing he advanced the $5,000, but that they ever offered or agreed, after paying Mulhall $500 for his services in negotiating the note, to give the plaintiff the equivalent of $10,000 for his signature to the note is utterly absurd and incredible, and such a conclusion, I think, has no fair foundation in the evidence.

But quite apart from this, it is clear from the finding

referred to, that whatever bargain the plaintiff made with the defendants with respect to this boat was wholly executory and based upon mutual promises. There is no dispute about the fact that on the 22d of November, 1898, the defendant Strong purchased with his own money the hull of a vessel that had been burned to or near the water's edge. The hull was transferred to him by the owners through a written bill of sale in the form prescribed by the statutes of the United States and recorded in the collector's office at Buffalo. This is the foundation of the defendants' title to the boat in question. He spent the following winter in rebuilding the vessel, and he and his co-defendants put into the work all the money that they had or they could raise or borrow, which was several thousand dollars in addition to what he paid for the hull, which was $1,375. These facts appear in the record and there is no dispute about them. The repairs and rebuilding attached to the hull and became a part of it. They simply constituted accessions to the defendants' property. In March, 1899, the boat was completed, except that it required $5,000 to do some finishing and to furnish the engines. When completed it was a steamer 220 feet long, with compound engines, and was rated for insurance at $30,000. The plaintiff must certainly show that in some way known to the law he became vested with the title to one-third of this boat and that the defendants' sole ownership was divested to the same extent. The question is how was this accomplished upon the facts disclosed by the record? How was the executory contract which the referee found converted into an executed contract of *ownership* in the plaintiff? The referee has found " that the plaintiff, from and after the 24th day of March, 1899, was the owner of an undivided one-third of the said vessel." The mind is at once directed as to what took place or happened on that day that conferred title to one-third of the vessel upon the plaintiff, since it is only " from and after " that day that the event took place. That was the day upon which the five thousand dollar note, signed by the two defendants and the plaintiff, was made.

On that day he became an accommodation maker of the note discounted at the German Bank at the request of Mulhall, and for which the latter was paid $500, not a dollar of which the plaintiff was ever called upon to pay. It is quite clear that the act which, in the opinion of the courts below, changed the title of this vessel by vesting a one-third interest in the plaintiff, was his signature to the note. It does not seem to me that title to a ship or vessel can be acquired in that way. If the plaintiff rendered any services in or about the repair or rebuilding of the boat, he is entitled to recover the same from the owners in an action at law. But he is not entitled to demand that a court of equity confer upon him by its decree, as it has, the absolute title to an undivided third of the property. It will not do to say that the earnings of the boat were large that season, and that the defendants ought to divide them with the plaintiff. The earnings belong to the parties who own the property, and unless title to it, or some part of it, was transferred to and vested in the plaintiff, he has no right to the earnings.

It cannot help the plaintiff in the least to say that there was an accounting of the earnings of the boat. Equity has jurisdiction of an accounting between joint owners of a vessel. But the difficulty in this case is that there is no proof that the plaintiff ever became joint owner, unless the signature to the note constituted him such, and that contention seems to me to be preposterous. I do not think there is any precedent for the plaintiff's appeal to a court of equity to confirm his title to the vessel, or to divest the title of the defendants, and if there was, I fail to find any fact proven or found in the record that warrants the judgment.

There can be little doubt that the unexpectedly large earnings of the boat during the season of 1899 stimulated the plaintiff's present claim. If there had been no earnings, but, on the contrary, a loss, it is not near so certain that the plaintiff would assume the position that he now does. It is still more certain that no court would ever hold him liable for any part of the loss on the theory that he was a joint owner. It

appears that at one time he threatened to libel the vessel and Strong testified that he feared that another boat in which he had an interest would become involved. There can be no doubt that the latter wanted to settle the plaintiff's claim in some way and get rid of it. There were several interviews between the parties looking to that end. One of these interviews took place at the office of the attorney then acting for the plaintiff and both the plaintiff and defendant Strong were present. Concededly, the interview was for the purpose of trying to settle and adjust the differences between them and the attempt failed. On the trial the plaintiff and the attorney were permitted to testify to what was said by the defendant at the interview, and, among other things, that Strong offered to let plaintiff have one-fifth of the boat. This testimony was objected to by the defendants' counsel on the ground, among others, that such offers to compromise were not competent and were privileged, but the objections were overruled and exceptions taken. The defendants' counsel, after the testimony was put into the case, moved to strike it out, but the motions were denied and exceptions taken. It seems to me that these rulings are fatal to the judgment. The law applicable to the question was clearly stated by Judge Bartlett in *Tennant* v. *Dudley* (144 N. Y. 504) as follows: "The rule is well settled that no advantage can be taken of offers made by way of compromise; that a party may, with impunity, attempt to buy his peace. (*Laurence* v. *Hopkins*, 13 Johns. 288; *Murray* v. *Coster*, 4 Cow. 635; *Williams* v. *Thorp*, 8 id. 201; *Home Ins. Co.* v. *Baltimore Warehouse Co.*, 93 U. S. 527; *West* v. *Smith*, 101 id. 263–273; *Smith* v. *Satterlee*, 130 N. Y. 677.)" In the case last cited an attempt was made to persuade the court that the testimony was harmless, but the court refused to overlook the objection and reversed the judgment. It will be very difficult to find any evidence in this case upon which the court could have based a finding to the effect that the plaintiff had acquired or become vested in some way with a one-third interest in the boat, unless great weight was given to the offers of the defendant to compromise the dispute at

12

one-fifth, and hence the testimony cannot be regarded otherwise than as prejudicial.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., BARTLETT, HAIGHT and WERNER, JJ., concur with VANN, J.; GRAY, J., concurs in result with O'BRIEN, J.

Judgment affirmed.