Burke, J.
(dissenting). Although I feel that lack of timeliness in demanding a jury is an insuperable obstacle to appellant’s position, a more serious and pervasive error in the decision about to be handed down concerns the place of jury trials in accounting proceedings in the Surrogate’s Court.
Section 68 of the Surrogate’s Court Act, requiring jury trials in Surrogate’s Court proceedings when constitutionally necessary, was in no way intended to broaden the availability of such a right to encompass accounting proceedings in which juries had never been used. When the predecessor (Code Civ. Pro., § 2538) of the present section 68 was first enacted in 1914 it was intended to overcome the problem of multiple trials theretofore arising in probate proceedings (see opinion of Follett, J., in Bowen v. Sweeney, 89 Hun 359, affd. 154 N. Y. 780). As the revisers wrote in respect to this section: “This will prevent the multiplicity of trials which may now be had in probate proceedings and permit the surrogate to determine finally all the issues in respect to the validity of a will. ’ ’ (Report *261 of Commission to Revise Practice and Procedure in Surrogates ’ Courts [1914], p. 1.)
The decision that the estate representative has a right to a jury trial as to claims submitted in the course of his accounting has been asserted only once since the Surrogate was given the power to adjudicate disputed claims against estates in 1914. In Matter of Beer (188 App. Div. 894, facts set forth in detail in Matter of Stein, 200 App. Div. 726) it was decided that an executor could demand a jury trial of a rejected claim as a matter of right. This case was relied upon by the respondent in the leading case of Matter of Boyle (242 N. Y. 342) and was rejected by name in this court’s opinion. I, therefore, cannot assent to the supposed distinction that the Boyle case is limited to creditors, the right of the estate representative to a jury trial remaining an open question. No case since Boyle has indicated that the Bench, the Bar and legal scholars have understood the decision to be so limited. For instance, in Matter of Raymond v. Estate of Davis (220 App. Div. 480, revd. 248 N. Y. 67) the Appellate Division set aside the verdict of a jury to which certain questions of fact were certified by the Surrogate at the demand of the administrator and the consent of the claimant. The Appellate Division held the verdict advisory only and made new findings of fact. Upon the appeal to this court, in which great attention was paid to various questions of jurisdiction and procedure, and the power of the Surrogate defined in very board terms, it was never suggested in the briefs or in the opinion of the court that the jury trial was the administrator’s right or that the Appellate Division acted improperly in treating it as advisory only. Every authority indicates that no one has a right to a trial by jury in an accounting proceeding in the Surrogate’s Court in which a rejected claim is litigated (11 Carmody-Wait, New York Practice, § 271, p. 210; Matter of Doherty, 155 Misc. 396; Matter of Ludlam, 5 Misc 2d 1068; Matter of Sullivan, 177 Misc. 570; Temporary State Comm, on Modernization, Revision and Simplification of the Law of Estates, Second Report to Governor and Legislature [N. Y. Legis. Doc, 1963, No. 19], p. 366). Indeed, among those denying the right to a jury trial in the broadest terms was Judge Heaton, noted expert on Surrogate’s practice and counsel to the 1914 Revisory Com *262 mission. (Report, supra, title page; 1 Warren’s Heaton, Surrogates’ Courts, § 108, par. 2 [h]).
It is suggested that the estate representative may be analogized to a “ defendant who is brought into equity and required, among other things, to defend there a law cause of action.” It is not explained how this analogy applies to an executor or administrator who petitions for a voluntary accounting, in the course of which a claim is litigated. And if the supposed analogy cannot be so applied in such a case it is equally inapplicable to a compulsory accounting where the estate representative is merely required to do that which he ought to do voluntarily. In neither case is anyone ‘‘ brought into equity ”. By accepting his letters, an estate representative accepts the responsibilities of his office, prominent among which is the duty of accounting for assets that have come into his hands (Surrogate’s Ct. Act, §§ 40, 257, 257-a, 258). If an analogy is to be drawn along the line of actions in equity it ought to be to the doctrine that those who institute equitable proceedings consent thereby to trial by the court (Cogswell v. New York, N. H. & H. R. R. Co., 105 N. Y. 319; Di Menna v. Cooper & Evans Co., 220 N. Y. 391). An estate representative holds the assets of the estate in trust for creditors of the decedent (Rogers v. Rogers, 3 Wend. 503; Blood v. Kane, 130 N. Y. 514) who have the absolute right to require the representative to account. (Surrogate’s Ct. Act, § 259; Matter of Gill, 183 N. Y. 347.) And, by analogy to actions for accountings in other courts, the action is none the less properly in equity because the court must first determine the “ jurisdictional fact ” of the plaintiff’s status—here as a creditor, or in Misner v. Strong (181 N. Y. 163) as a co-owner.
The constitutional right to trial by jury extends to ‘ ‘ all cases in which it has heretofore been guaranteed by constitutional provision” (N. Y. Const., art. I, § 2). The majority would read the guarantee as engrafting the right to a jury trial on certain issues of fact in whatever form of action or proceeding such issue may arise. Thus, since the enforcibility of an attorney’s claim against an executor or administrator for services rendered the decedent was formerly actionable solely at law, it must forever be tried to a jury even though it may now arise in an accounting proceeding in the Surrogate’s Court. *263 I do not understand the guarantee to have such an unusual and devastating effect on the conduct of judicial business in special courts whose procedures are not conducted according to the course of the common law. The right to jury trials is applicable to ‘ ‘ cases ’ ’ in which it had been historically used. “ Cases ”, in normal usage, refers to the whole of a litigation, the substantive issues and the procedure according to which they are tried. Therefore, it is only when the whole case, viewed in its procedural setting, corresponds to the sort of case tried to a jury at common law that the constitutional provision applies. The applicability of the constitutional guarantee of jury trial to proceedings in the Surrogate’s Court was discussed ably and at length by Surrogate Delehanty in Matter of Leary (175 Misc. 254, affd. 260 App. Div. 100, affd. 285 N. Y. 693). It was there pointed out that the 1938 Constitution guaranteed the right of trial by jury only to the extent to which it was required in cases prior to the 1894 Constitution. To quote briefly:
‘ ‘ The provision for jury trial in the Constitution adopted in 1894 assured jury trials only as that procedure was theretofore used. At that date jury trial in the Surrogate’s Court was a thing unknown. Its development has been a matter of slow growth in the court. The brief of petitioner, of course, contains no suggestion that any practice of jury trial in this type of proceeding then existed in the Surrogate’s Court. Since the proceeding is an appeal to equity there was no jury trial in any court. In a common-law court, an action for damages for conversion or an action in replevin might furnish relief. In the Surrogate’s Court only a proceeding to obtain a direction to the fiduciary was possible in 1894.
‘ ‘ All of the proceedings of this court are special proceedings. (Matter of Burrows [Prime], 283 N. Y. 540; Matter of Schoenewerg, 277 id. 424, 427.) The distinction is a governing one as the cited cases show. The presumption is that no jury trial of a special proceeding in this court is available to the parties unless specially provided by statute. (Matter of Pardee [1933], 239 App. Div. 876; Matter of Popek [1935], 157 Misc. 421, 423; and see Matter of Beare, 122 id. 519, affd. 214 App. Div. 723.) The first case just cited denied a jury trial in an application under section 231-a of the Surrogate’s Court Act. *264 In the second, a jury trial was denied in an application under section 216 of the Surrogate’s Court Act. In each case the petitioner sought a decree directing payment of money only.” (175 Misc., p. 256; italics in text.)
Of course, analogies must serve where identity does not exist. Some procedural innovations unknown to the common law so substantially resemble the manner in which similar controversies were formerly resolved that the right to a jury trial is carried over. Where, for example, a device such as a declaratory judgment action is used to establish a debt, it serves merely as a shell into which the common-law action is placed and the right to a jury trial follows the action into its new procedural home (Simler v. Conner, 372 U. S. 221). Where, however, a claim formerly actionable only at law is brought by legislation (L. 1914, ch. 443) within a larger proceeding in the Surrogate’s Court, in which a great many other matters affecting a great many other people are litigable, the dominant character of the proceeding remains the same and the newly cognizable issue becomes just one of the many triable to the Surrogate.
The presentation and settlement of claims against those whose affairs, through death or insolvency, are thrown into a special tribunal constituted specially for that purpose are plainly special cases not amenable to simple distinctions as to whether the nature of the issue or the nature of the proceeding should control the right to a jury trial. In the closely analogous case of claims presented in a bankruptcy proceeding, the United States Supreme Court long ago said: “So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control. Thus a claim of debt or damages against the bankrupt is investigated by chancery methods.” (Barton v. Barbour, 104 U. S. 126, 134.)
The fact that in this case the issues were narrowed by consent to dispense with all of the incidents of an accounting, saving only the validity of the claim, cannot operate to change the nature of the proceeding or the procedural rights of the parties. *265 If the proceeding, as it comes into court, properly invokes the power of equity to vindicate a claim (here to an accounting) historically cognizable in equity, then no right to a jury trial exists. (Van Rensselaer v. Van Rensselaer, 113 N. Y. 207, 214.) This differs completely from a case in which no right to an accounting is properly made out in the pleadings. There, of course, the defendant’s demand for a jury trial must be honored. (McCarthy & Co. v. Hill, 295 N. Y. 320.)
Indeed, the procedure informally followed in this case corresponds exactly to that specified in newly enacted section 211-b of the Surrogate’s Court Act (L. 1963, ch. 488, § 5), under which the Surrogate may determine the validity of a claim in advance of a formal accounting. The language of the section * leaves no doubt that the Surrogate, not a jury, is to pass upon the claim.
To hold the procedure authorized by this section unconstitutional in the face of the determination made in the 1938 Constitution not to expand the constitutional guarantee but to leave the Legislature free to experiment in various proceedings is, in my view, wholly unwarranted. The order appealed from should be affirmed and the question certified answered in the negative.

 “ If the surrogate is satisfied that the best interests of the estate require it, he may thereupon determine the claim and all issues relating thereto as a preliminary step in the accounting proceeding and make such direction as justice shall require.”